
UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| NORTHERN VALLEY COMMUNICATIONS, LLC, | \* \* \* | CIV 09-1003 **2009 D.S.D. 10** |
| Plaintiff, | \* | OPINION AND ORDER |
| v. | \* \* | |
| AT&T CORP., Defendant. | \* \* \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**KORNMANN, U.S. DISTRICT JUDGE**

## INTRODUCTION

[¶1.] Northern Valley filed this diversity action to collect for amounts allegedly due from AT&T for providing originating and terminating telephone access services. Plaintiff alleged claims for breach of contract and breach of implied contract arising out of federal and state tariffs, violation of the Telecommunications Act of 1996 ("the Act" or "the 1996 Act") , 47 U.S.C. §§ 201 and 203, collection action pursuant to state tariff, and unjust enrichment. Plaintiff seeks damages in the amount of $6,191,303 for amounts claimed to be due from January 1, 2008, to July 1, 2008, interest, attorneys fees, punitive damages, and injunctive relief. AT&T filed an answer contending that Northern Valley did not provide access services for which it billed AT&T. AT&T also filed a counterclaim alleging violation of Northern Valley's tariffs and the Act, 47 U.S.C. § 203(c), by charging for services not provided for in Northern Valley's tariffs, violation of the Act, 47 U.S.C. § 201(b), by billing for services not provided to AT&T, fraudulent and negligent misrepresentation, unjust enrichment, and civil conspiracy. AT&T seeks damages, declaratory and injunctive relief, and attorneys fees. Plaintiff filed a motion (Doc. 24) for judgment on the pleadings as to its claims set forth in the complaint and the counterclaims asserted by defendant.

## BACKGROUND

[¶2.] The 1996 Act amended the Communications Act of 1934 to promote "competition and the reduction of regulation in the telecommunications industry, in order to secure lower prices and higher quality services for American telecommunications consumers and to encourage the rapid deployment of new telecommunications technology." Verizon Wireless VAW LLC v. Sahr, 2006 D.S.D. 15, ¶ 10, 457 F.Supp.2nd 940, 944-945 (*citing* Telecommunications Act of 1996, Pub.L. No. 104-104, purpose statement; 110 Stat. 56 (1996)). "Before the Act was passed, incumbent local exchange carriers ["ILECs"] served as the exclusive providers of local telephone service, which was considered a natural monopoly." Iowa Telecommunications Services, Inc. v. Iowa Utilities Bd., 563 F.3d 743, 745 -746 (8th Cir. 2009). The 1996 Act imposed a duty upon ILECs to provide interconnection with their networks to any requesting telecommunications carrier, including a competing local carrier in the same calling area. *Id.* at 746. Northern Valley is a competitive local exchange carrier ("CLEC") that offers local telephone service. CLECs are companies that were not the original monopoly telephone company in a specific area at the time of the 1996 Act. Verizon Wireless (VAW) LLC v. Kolbeck, 2007 D.S.D. 30, ¶ 10, 529 F.Supp.2d 1081, 1086. Northern Valley owns the wires which allow telephone calls to be delivered to homes and businesses of its customers.

[¶3.] AT&T is an interexchange carrier ("IXC") that provides long distance service to its customers. A long distance carrier cannot complete, i.e., deliver, its customer's call by itself. Its customer's local exchange carrier ("LEC") has to originate the call and the LEC for the intended call recipient must terminate the call. The long distance carrier pays both LECs "access compensation" for the use of their equipment and services in connecting the call and terminating the call. *See* Alma Communications Co. v. Missouri Public Service Com'n, 490 F.3d 619, 621 (8th Cir. 2007).[1]

---

[1] Local calls between LECs serving the same area are funded by reciprocal compensation agreements between the LECs. Long-distance calls are funded by access compensation. Alma Communications Co. v. Missouri Public Service Com'n, 490 F.3d 619, 621 (8th Cir. 2007).

[¶4.] Northern Valley provides "terminating switched access service" to AT&T to enable AT&T to deliver its customers' long distance calls to Northern Valley's customers. "Termination" is the "switching of the telecommunications traffic at the terminating carrier's end office switch, or equivalent facility, and delivery of such traffic to the called party's premises." 47 C.F.R. § 51.701(d).

[¶5.] Tariffs are schedules setting forth the terms and conditions of services and rates for common carriers . See 47 C.F.R. 61.3(rr). Northern Valley filed tariffs with the Federal Communications Commission ("FCC") (for interstate calls) and the South Dakota Public Utilities Commission ("the PUC") (for intrastate calls) and its access services are therefore governed by the rates set forth in Northern Valley's tariffs. Like a contract,[2] a tariff controls the relationship between the carrier and its customers. Marcus v. AT & T Co., 138 F.3d 46, 56 (2d Cir. 1998).

[¶6.] Though not applicable to the pending motion for judgment on the pleadings, I would note that this is just one of a number of other cases pending in the District of South Dakota and elsewhere which were filed by CLECs against IXCs alleging failure to pay switched access charges.[3] In each of these cases, the defendant IXCs have alleged that the plaintiff LECs have engaged in "traffic pumping" schemes with various companies offering conference calling services whereby the LECs provide telephone numbers to the conference calling company, the

---

[2]Federal tariffs are not mere contracts; they have the force of federal law. MCI Telecommunications Corp. v. Garden State Inv. Corp., 981 F.2d 385, 387 (8th Cir. 1992). Therefore, the district courts have jurisdiction over a claim for amounts claimed to be due under a tariff.

[3]Now pending in this District, in addition to this case, are *Northern Valley Communications, LLC. v. Qwest Communications Corporation*, CIV 09-1004, *Splitrock Properties, Inc. v. Sprint Communications Company, Limited Partnership*, CIV 09-4075, *Sancom, Inc. v. AT&T Corp.*, CIV 08-4211, *Splitrock Properties, Inc. v. Qwest Communications Corporation*, CIV 08-4172, *Northern Valley Communications, LLC v. Sprint Communications Company, Limited Partnership*, CIV 08-1003, *Sancom, Inc. v. Sprint Communications Company, Limited Partnership*, CIV 07-4107, *Northern Valley Communications, Inc. and Sancom, Inc. v. MCI Communications Services, Inc.*, CIV 07-1016 (the plaintiff's claims have all been dismissed - the case is still pending as to counterclaims asserted by MCI against various counterclaim defendants brought in by MCI).

conference calling company advertises free conference calls in an attempt to generate long distance calls through the IXCs to the LEC's number, the LECs bill the IXCs for call termination, and split the profits with the conference calling company as "marketing fees." One of the defenses asserted by the IXCs is that these calls do not "terminate" with an end user in the LEC's network and therefore the switched access services provided by Northern Valley to terminate such calls are not covered by Northern Valley's tariffs and therefore, Northern Valley may not collect from IXCs.

**DECISION**

[¶7.]Judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) "'is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law,' the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6)." Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009) (*quoting Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990)). The district court must "view all facts pleaded by the nonmoving party as true and grant all reasonable inferences in favor of that party." Poehl v. Countrywide Home Loans, Inc., 528 F.3d 1093, 1096 (8th Cir. 2008).

[¶8.] Northern Valley claims it is entitled to judgment on its pleadings based upon the filed rate doctrine, also called the filed tariff doctrine. The Communications Act requires every common carrier[4] to file with the FCC schedules, that is, tariffs "showing all charges . . . classifications, practices, and regulations affecting such charges." 47 U.S.C. § 203(a). The United States Supreme Court has recognized that

> These provisions are modeled after similar provisions of the Interstate Commerce Act (ICA) and share its goal of preventing unreasonable and discriminatory charges. Accordingly, the century-old "filed rate doctrine" associated with the ICA tariff provisions applies to the Communications Act as well.

---

[4]The term "common carrier" or "carrier" means any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter . . . 47 U.S.C. § 153(a)(10).

4

American Tel. and Tel. Co. v. Central Office Telephone, Inc., 524 U.S. 214, 221, 118 S.Ct. 1956, 1962, 141 L.Ed.2d 222 (1998) (internal citations omitted). The Supreme Court has described the basic contours of the filed rate doctrine under the ICA:

> Section 203(c) makes it unlawful for a carrier to extend to any person any privileges or facilities in such communication, or employ or enforce any classifications, regulations, or practices affecting such charges, except as specified in such schedule.
>
> Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.

AT&T v. Central Office Telephone, 524 U.S. at 221-22, 118 S.Ct. at 1962-63 (*quoting* Louisville & Nashville R. Co. v. Maxwell, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915)). The filed rate doctrine is strictly applied. AT&T v. Central Office Telephone, 524 U.S. at 223, 118 S.Ct. at 1963.

[¶9.] The Second Circuit has explained:

> The filed rate doctrine is motivated by two "companion principles" (1) preventing carriers from engaging in price discrimination as between ratepayers (the "nondiscrimination strand") and (2) preserving the exclusive role of federal agencies in approving rates for telecommunications services that are "reasonable" by keeping courts out of the rate-making process (the "nonjusticiability strand"), a function that the federal regulatory agencies are more competent to perform.

Marcus v. AT&T Corp., 138 F.3d 46, 58 (2nd Cir. 1998) (*citing, inter alia* H.J. Inc. v. Northwestern Bell Tel. Co., 954 F.2d 485, 488 (8th Cir. 1992)). *Accord*, Verizon Delaware, Inc. v. Covad Communications Co., 377 F.3d 1081, 1086 (9th Cir. 2004). The doctrine is applied to prevent a cause of action that implicates either the nondiscrimination strand or the nonjusticiability strand. Marcus v. AT&T Corp., 138 F.3d at 59. "[T]he focus for determining whether the filed rate doctrine applies is the impact the court's decision will have on agency

procedures and rate determinations." H.J. v. Northwestern Bell, 954 F.2d at 489. The doctrine does not apply where the claim does "not attack the rate itself" or does " not require the court to 'second-guess' the rate-making agency [here, the FCC]." *Id.* at 490.

[¶10.] Then Chief Justice Rehnquist, in his concurring opinion in AT&T v. Central Office Telephone, stated that, in "order for the filed rate doctrine to serve its purpose, therefore, it need pre-empt only those suits that seek to alter the terms and conditions provided for in the tariff." AT&T v. Central Office Telephone, 524 U.S. at 229, 118 S.Ct. at 1966 (Rehnquist, Chief Justice, concurring).

> The tariff does not govern, however, the entirety of the relationship between the common carrier and its customers. For example, it does not affect whatever duties state law might impose on petitioner to refrain from intentionally interfering with respondent's relationships with its customers by means other than failing to honor unenforceable side agreements, or to refrain from engaging in slander or libel, or to satisfy other contractual obligations. The filed rate doctrine's purpose is to ensure that the filed rates are the exclusive source of the terms and conditions by which the common carrier provides to its customers the services covered by the tariff. It does not serve as a shield against all actions based in state law.

*Id.* at 230-31, 118 S.Ct. at 1966-67.

[¶11.] Northern Valley cites various FCC orders for the proposition that its access charges are presumed just and reasonable as a matter of law and, therefore, AT&T is legally obligated to pay all charges properly billed and seek any redress before the FCC. In this case, however, AT&T contends that the services provided by Northern Valley do not fall within the terms of the tariffs. Both Chief Judge Schreier and Judge Piersol of the District of South Dakota have denied motions by CLECs to dismiss the counterclaims filed by the IXCs under the filed rate doctrine. *See* Sancom, Inc. v. Sprint Communications Company Limited Partnership, 618 F.Supp.2d 1086 (D.S.D. March 30, 2009), Sancom, Inc. v. Qwest Communications Corporation, CIV. 07-4147-KES, 2008 WL 2627465 (D.S.D. June 26, 2008), and Northern Valley Communications, LLC v. MCI Communications Services, Inc., CIV 07-1016-KES, 2008 WL 2627519 (D.S.D. June 26, 2008).[5] In each of those cases the district court found that the filed

---

[5]Apparently unhappy with Judge Schreier's rulings in Sancom v. Qwest, and Northern Valley v. Qwest, Northern Valley filed, on July 30, 2008, this action against AT&T and an action

rate doctrine did not bar the counterclaims because the IXCs were not challenging the reasonableness of the rates charged by the CLECs, but were instead asserting that the CLECs were billing for services not set forth in the tariff.[6]

[¶12.] The filed rate doctrine has been called into question based upon the FCC's post 1996 Act "program of deregulation in favor of regulation by the market, supplemented by state-law remedies." See Verizon v. Covad, 377 F.3d at 1088, Fax Telecommunicaciones Inc. v. AT & T, 138 F.3d 479, 491 (2nd Cir. 1998) (the filed rate doctrine "is plainly a creature of a different time . . . although the filing requirement prevented price discrimination and unfair practices . . . strict application of the filed rate doctrine frustrates those same goals in today's era of deregulation and multiple competing carriers"). However, to the extent that plaintiff CLECs and defendant IXCs assert claims that either was entitled to a different rate or different services than those set forth in filed tariffs, the courts in this Circuit are bound to follow the filed rate doctrine. Firstcom, Inc. v. Qwest Corp., 555 F.3d 669, 680 (8th Cir. 2009).

[¶13.] Where, as here, it is alleged that the charges as set out in Northern Valley's tariffs do not apply to the type of traffic at issue in this case, the filed rate doctrine would not apply to defeat AT&T's claims and defenses. Iowa Network Services, Inc. v. Qwest Corp., 466 F.3d 1091, 1097 (8th Cir. 2006). Northern Valley claims the FCC's ruling in Qwest Communications Corp. v. Farmers & Merchants Mutual Telephone Company, Mem. Op. & Order, File Nol EB-07-MD-001, FCC 07-175 (October 2, 2007), is dispositive of the claim that the services for which it

---

against Qwest (CIV 09-1004) in the Southern District of New York. U.S. District Judge Daniels granted AT&T's and Qwest's motions to transfer the matters to the District of South Dakota. Sancom filed, on August 4, 2008, an action against AT&T (CIV 08-4211) in the Southern District of New York. U.S. District Judge Koeltl granted AT&T's motion to transfer that case to the District of South Dakota.

[6]More recently, Judge Schreier granted Qwest's motion to dismiss a CLEC's unjust enrichment claim. Sancon, Inc. v. Qwest Communcations Corporation, ___ F.Supp.2d ___, 2009 WL 1748709 (D.S.D. June 19, 2009) ("an award of quantum meruit would require the court to establish a value (i.e., set a rate) for the service provided"). In another case filed in this District, Judge Piersol also dismissed unjust enrichment and quantum meruit claims under the filed rate doctrine. Splitrock Properties, Inc. v. Qwest Communcations Corporation, 2009 WL 2827901 (D.S.D. August 28, 2009).

billed AT&T are covered by its tariffs. In that case, the FCC held that the conference calling companies were "end users" under the relevant tariff and therefore Farmers' charges to Qwest did fall within the terms of Farmers' tariff. However, the FCC granted reconsideration for further development of the record on January 29, 2008. FCC 08-29. The order granting reconsideration was the basis of Judge Piersol's denial of the motion to dismiss on March 20, 2009, in Sancom v. Sprint, *supra*.

[¶14.] Apparently the FCC has not yet filed any opinion on reconsideration in Farmers. Notwithstanding any opinions in other so-called traffic pumping cases, the motion for judgment on the pleadings should be denied. It is unclear on the present record whether Northern Valley's conference calling customers are "end users," covered by the tariffs in question. Judgment on the pleadings is not appropriate in this case because there are factual disputes which cannot be resolved on the current record. "In the absence of clarity regarding how those services are classified and regulated, it would be premature to address application of the filed rate doctrine to [the parties'] claim[s]." Tekstar Communications, Inc. v. Sprint Communications Co. L.P., 2009 WL 2155930, 3 (D.Minn. 2009). Further, it is not yet absolutely clear to this Court whether the filed rate doctrine is applicable, given the 1996 Act's "detariffing" policy. Even if the filed rate doctrine would operate to prevent certain damages claims asserted by AT&T, the Court must still determine whether claims for injunctive or declaratory relief are barred. Northern Valley is not entitled to judgment as a matter of law on its claims and on AT&T's defenses and counterclaims.

[¶15.] Now, therefore,

[¶16.] IT IS ORDERED that Northern Valley's motion, Doc. 24, for judgment on the pleadings is denied.

Dated this 24th day of September, 2009.

BY THE COURT:

*(signature)*
CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: *(signature)*
DEPUTY
(SEAL)